# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ------------------------------------------------------------ X | |
| IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | 3:09-md-02100-DRH-PMF<br><br>MDL No. 2100 |
| ------------------------------------------------------------ | |
| **This Document Relates to:**<br><br>*Holly Detroit v. Bayer Healthcare LLC, et al.*<br>No. 3:11-cv-20087-DRH-PMF | **Judge David R. Herndon**<br><br>ORDER DENYING REMAND AND MOTION FOR ORAL ARGUMENT |

## ORDER DENYING REMAND

### INTRODUCTION

This matter is before the Court on the plaintiff's motion to remand the above-captioned matter to state court (Doc. 14) and plaintiff's motion for oral argument on the same (Doc. 27). For the reasons discussed below, the Court denies plaintiff's motion to remand to state court. Further, the Court denies plaintiff's motion for oral argument as unnecessary.

### BACKGROUND

Plaintiff brought this product liability action in Washington state court against the Bayer defendants and the Vancouver Clinic, among others. The complaint alleges that the plaintiff was injured as a result of using YAZ, an FDA-approved oral contraceptive prescription medication. The sole non-diverse

1

defendant is The Vancouver Clinic – the healthcare facility that prescribed and distributed the subject drug to the plaintiff. The Bayer defendants removed this action to the Western District of Washington, alleging that The Vancouver Clinic had been fraudulently joined. The action was subsequently transferred to this MDL with plaintiff's motion to remand pending.

Plaintiff brings causes of action sounding in strict liability, negligence, breach of express and implied warranties, misrepresentation and/or fraud, and statutory consumer protection. The Court assesses the viability of plaintiff's claims below.

**ANALYSIS**

**A.     Fraudulent Joinder Principles**

"A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur v. L.A. Weight Loss Centers, Inc.*577 F.3d 752, 763 (7th Cir. 2009).*See also Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir.1993) (collecting cases). "The 'fraudulent joinder' doctrine, therefore, permits a district court considering removal "to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Schur*, 577 F.3d at 763.

In the context of jurisdiction, "fraudulent" is a term of art. *See Poulosv. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992). "Although false

2

allegations of jurisdictional fact may make joinder fraudulent . . . in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success whatever the plaintiff's motives." *Id.* (collecting cases). To prove fraudulent joinder, the out-of-state defendant must "show there exists no 'reasonable possibility that a state court would rule against the [in-state] defendant.'" *Schwartz v. State Farm Mutual Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir.1999) (citing Poulos, 959 F.2d at 73)). *See also Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011) (fraudulent joinder is present where the claim against the non-diverse defendant is "utterly groundless"); *Schur*, 577 F.3d at 764 (in a fraudulent joinder analysis, the "district court must ask whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant"). Although a defendant bears a "heavy duty" in this regard, "it need not negate any possible theory that [the plaintiff] might allege in the future: only [the plaintiff's] present allegations count." *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 74 (7th Cir. 1992).

**B.     Plaintiff's "Product Liability" Claims**

   **1.    Washington Product Liability Act is the exclusive remedy for product-related harm**

The Washington Product Liability Act, RCW 7.72 *et seq*. ("WPLA"), abrogates traditional common law remedies for product-related harms, creating instead a single cause of action for any "product liability claim." *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1066 (Wash.

3

1993); *Washington Water Power Co. v. Graybar Elec. Co.*, 774 P.2d 1199, 1202 (Wash. 1989) (the WPLA is the exclusive remedy for product liability claims).

### 2. Healthcare facility, as a provider of professional services, is exempt from liability under the WPLA

A "provider of professional services" is exempt from liability under the WPLA. RCW 7.72.010(1)(b) (exempting from liability a "provider of professional services who utilizes or sells products within the legally authorized scope of the professional practice of the provide). *See also McKenna v. Harrison Memorial Hosp.*, 960 P.2d 486, 487-489 (service providers exempt from liability under the WPLA). In assessing whether an entity is a service provider and therefore exempt from liability under the WPLA, Washington courts consider the primary purpose of the relevant relationship or transaction. *See Anderson Hay & Grain Co., Inc. v. United Dominion Industries, Inc.*, 76 P.3d 1205, 1210 (Wash. App. 2003); *McKenna*, 960 P.2d 486, 487-489.

Applying this test, the Washington Appellate Court in *McKenna* concluded that a hospital's primary purpose is the provision of healthcare services and that a hospital's use or sale of any products is merely incidental to its primary purpose. *Id.* at 486-488 (hospital, which supplied a screw and rod device that was implanted in a patient's spine, was a provider of professional services and not a product seller). In so holding, the court relied on *Gile v. Kennewick Pub. Hosp. Dist.*, 296 P.2d 662 (Wash. 1956).*Id.* at 123-124. In *Gile* the court stated:

4

> [T]he contractual relationship between a hospital and a patient is not one of sale but is one of service; that during treatment in the hospital penicillin,casts, bandages, or blood, for which additional charges are made, may be transferred from the hospital to the patient; and yet the transfer is an incidental feature of the transaction and not a sale.

*Gile*, 296 P.2d 662.

The relevant relationship in the instant case is indistinguishable from the relationship at issue in *McKenna*. The Vancouver Clinic is a healthcare clinic, staffed by physicians and other medical professionals, that provides healthcare services to its patients. The provision of prescription medications to patients is merely incidental to the clinic's primary purpose – the provision of medical services. Because Vancouver Clinic is a provider of professional services it is exempt from liability under the WPLA. Accordingly, to the extent that plaintiff has alleged "product liability" claims governed by the WPLA her claims have no chance of success under Washington law.[1]

### 3. Claims for product-related harm sounding in strict liability, negligence, breach of express and implied warranties, and negligent misrepresentation are "product liability claims"

Under the WPLA, a product liability claim is broadly defined and includes:

> any claim or action brought for harm caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions,

---

[1] Plaintiff's briefing only addresses the viability of her misrepresentation/fraud claim and the viability of her statutory consumer protection claim. She does not address any of the Bayer defendants' arguments with regard to the WPLA. Thus, in essence, plaintiff admits that her claims under the WPLA have no reasonable chance of success.

5

> marketing, packaging, storage or labeling of the relevant product. It includes, but is not limited to, *any claim or action previously based on: Strict liability in tort; negligence; breach of express or implied warranty; breach of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment, or nondisclosure, whether negligent or innocent; or other claim or action previously based on any other substantive legal theory except fraud, intentionally caused harm or a claim or action under the consumer protection act*, chapter *19.86 RCW*.

RCW 7.72.010(4) (emphasis added).

The WPLA includes strict liability, negligence, breach of express and implied warranties, and negligent misrepresentation among the claims that constitute "product liability claims." RCW 7.72.010(4). *See also Washington State Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1066 (Wash. 1993) (a claim previously based on negligence for product-related harm is within the WPLA's definition of product liability claim)*; Washington Water Power Co. v. Graybar Elec. Co.,* 112 Wash.2d 847, 855 n. 4, 774 P.2d 1199 (Wash. 1989) (holding that the "WPLA preempts the variety of common law causes of action for harm caused by product defects"); *Baughn v. Honda Motor Co., Ltd.,* 727 P.2d 655, 668 (Wash. 1986) (en banc) (personal injury claims sounding in breach of express and implied warranties are product liability actions under the WPLA); *Hofstee v. Dow*, 36 P.3d 1073, 1076 (Wash. App. 2001) ("In Washington, negligence and strict liability claims are now subsumed under [the WPLA]."). Therefore, Counts I-VIII of plaintiff's complaint – claims for strict liability, negligence, and breach of express and implied warranties)

6

are properly characterized as product liability claims under the WPLA.[2] Similarly, Count IX of plaintiff's complaint – to the extent that plaintiff has alleged a claim for *negligent* misrepresentation (opposed to fraud or intentional misrepresentation) is also a product liability claim under the WPLA.

The WPLA expressly excludes claims for "fraud, intentionally caused harm or a claim or action under the consumer protection act, chapter 19.86 RCW." RCW 7.72.010(4). Accordingly, Count IX (to the extent plaintiff has alleged fraud or intentional misrepresentation) and Count X (statutory consumer protection) are not product liability claims under the WPLA and are not subject to its provisions. *See Louisiana-Pacific Corp. v. ASARCO Inc.*, 24 F.3d 1565, 1584 (9th Cir. 1994) (although common law nuisance claims based on negligent conduct were preempted by the WPLA, common law nuisance claims based on intentional conduct were not preempted because the WPLA excludes claims based on "intentionally caused harm").

Because Counts I-IX of plaintiff's complaint (claims for strict liability, negligence, breach of express and implied warranties, and

---

[2] Plaintiff does not expressly assert a cause of action under the WPLA. Instead, she brings claims based on traditional common law product liability theories (Counts I – IX). Arguably, because the plaintiff has not asserted any claim under the WPLA and the WPLA abrogates any common law tort remedies for product related harm plaintiff, plaintiff's common law product liability claims have no reasonable chance of success in state court. The Court nonetheless assesses these claims as if they had been brought as claims under the WPLA.

negligent misrepresentation) are product liability claims under the WPLA, they have no chance of success as to The Vancouver Clinic.

C.      **Breach of Express and Implied Warranties Under the UCC**

Plaintiff's warranty claims might also be brought under Washington's version of the Uniform Commercial Code ("UCC") Article 2, Title 62A RCW. *See Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Const., Inc.*, 831 P.2d 724, 729 (Wash. 1992) ("Product liability claims based on breach of express or implied warranties can be raised either in tort under the WPLA or in contract under the Uniform Commercial Code.").[3] Plaintiff's breach of warranty claims, however, fair no better under UCC. To maintain a cause of action under Article 2 the subject transaction must be a "transaction in goods." RCW 62A.2-102. In Washington, where a transaction involves both the provision of goods and services, courts apply the predominant factor test to determine whether the UCC is applicable. *Tacoma Athletic club, Inc. v. Indoor Comfort Systems, Inc.*, 902

---

[3] There are, of course, restrictions on recovery for purely economic product related harm. Recovery under the WPLA is limited to claims for physical damage to person or property. RCW 7.72.010(6); *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 831 P.2d 724 (Wash. 1992). Thus, warranty claims for purely economic loss must be brought under the UCC. *Id*. *See also Hofstee v. Dow*, 36 P.3d 1073, 1076 (Wash. App. 2001) ("Particular damages may be remediable in tort as well as in contract, but if the damages fall on the contract side of the line and are more properly remediable in contract, tort recovery is precluded."). In the instant case, plaintiff is bringing warranty claims for product related physical harm. The limited case law involving tort claims for product related physical harm under the WPLA and breach of warranty claims indicates that warranty claims may be brought under the WPLA or the UCC. *See e.g., Touchet Valley*, 831 P.2d 724, 729-735 (allowing plaintiff to pursue UCC breach of warranty claims and product liability claims under the WPLA for product related physical harm to property).

8

P.2d 175, 177-180 (Wash. App. 1995). Under this test, "if the sale of goods dominates, Article 2 governs; if the sale of services dominates, Article 2 is inapplicable." *Id*. at 178.

When called upon to assess the nature of the relationship between hospital and patient, Washington courts have consistently concluded that the provision of services dominates. *See McKenna v. Harrison memorial Hosp.*, 960 P.2d 486, 487-489 (Wash. App. 1998) (hospital not subject to liability under the WPLA because its primary purpose is the provision of services); *Howell v. Spokane & Inland Empire Blood Bank*, 785 P.2d 815 (Wash. 1990) (hospital's sale of blood for transfusion was a service and not a product sale); *Gile v. Kennewick Pub. Hosp. Dist*., 296 P.2d 662 (Wash. 1956) (relationship between hospital and patient is one of service not sale); *Id.* at 662 ("One who enters a hospital as a patient goes there, not to buy medicine or pills, not to purchase bandages or iodine or serum or blood, but to obtain a course of treatment in the hope of being cured....") (internal citation omitted).

Considering the strong position taken by Washington courts with regard to the nature of the relationship between patient and hospital, it is evident that the sale of services dominates the subject transaction between The Vancouver Clinic and the plaintiff. Accordingly, even if brought under the UCC, plaintiff's breach of warranty claims have no chance of success in state court.

**D. Non-Product Liability Claims – Statutory Consumer Protection and Intentional Misrepresentation/Fraud**

**1. Requisite Elements**

To state a claim under Washington's Consumer Protection Act, RCW 19.86.020 ("WCPA"), a plaintiff must allege five elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

In the medical arena, a healthcare provider may be liable under the WCPA for the entrepreneurial or commercial aspects of his or her professional services (such services speak to the requisite element of "occurring in trade or commerce"). *Quimby v. Fine*, 724 P.2d 403, 405-406 (Wash. App. 1986). *See also Michael v. Mosquera-Lacy*, 200 P.3d 695, 699 (Wash. 2009) (the term "trade" as used in the WCPA "includes only the entrepreneurial or commercial aspects of professional services, not the substantive quality of services provided") (internal quotation omitted). If a healthcare provider acts for the purpose of financial gain or soliciting/retaining patients, then his or her acts are entrepreneurial in nature and are subject to the provisions of the WCPA. *Michael*, 200 P.3d at 699-700 (disputed procedure, use of human bone instead of cow bone, was not entrepreneurial activity; dentist did not solicit or retain patients by advertising disputed procedure); *Eriks v. Denver*, 824 P.2d 1207, 1214

(Wash. 1992) (failing to disclose a conflict for purpose of gaining clients or increasing profits would be an entrepreneurial activity); *Reed v. ANM Health Care*, 225 P.3d 1012, 1014 (Wash. App. 2008) ("if a doctor is motivated to promote an unnecessary surgery for financial gain, an injured plaintiff can pursue a claim under the Consumer Protection Act.") (citing *Quimbly*, 724 P.2d 403).[4]

To state a claim for intentional misrepresentation or fraud the plaintiff must allege the following nine elements: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon the representation; and (9) damages suffered by the plaintiff. *W. Coast, Inc. v. Snohomish County*, 48 P.3d 997, 1000 (Wash. App. 2002) (citing *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996)).

### 2. Plaintiff's Allegations

The following allegations are the only allegations directed expressly against Vancouver Clinic: (1) Vancouver Clinic is in the business of prescribing

---

[4] The Bayer defendants seem to imply that plaintiff must allege "lack of informed consent" to bring a claim against a healthcare provider under the WCPA. *See* Doc. 17 pp. 13-14. Plaintiff correctly notes that a WCPA claim may be asserted against a healthcare provider if the claim is based on the provider's entrepreneurial activities.

and dispensing the subject drug, (2) Vancouver Clinic is a distributor and/or supplier of the subject drug; (3) Vancouver Clinic provided samples of the subject drug and prescribed the subject drug to the plaintiff, and (4) Vancouver Clinic accepted samples from Bayer marketing representatives and dispensed those samples to its patients (Doc. 1-2 ¶¶ 8, 48, & 61).

These allegations cannot fairly be read as comprising a claim for statutory consumer protection or intentional misrepresentation/fraud. With regard to statutory consumer protection, the complaint is devoid of any specific conduct on the part of The Vancouver Clinic that could constitute an "unfair or deceptive act or practice" related to financial gain or the solicitation of patients.[5] As to intentional misrepresentation/fraud, the complaint does not allege that The Vancouver Clinic made *any* representations regarding the subject drug, let alone a representation that The Vancouver Clinic knew to be false. In fact, plaintiff repeatedly alleges that the Bayer defendants concealed vital information regarding the subject drug's safety and efficacy from plaintiff's healthcare providers and from the medical community in general. *See e.g.*, Doc. 1-2 ¶¶ 54 (alleging

---

[5] Plaintiff argues that she "expects discovery in this case to show that The Vancouver Clinic received financial rebates or other reciprocal benefits (*e.g.* kickbacks) from the Bayer defendants for prescribing Yaz." Doc. 14 p. 8. Allegations with regard to what plaintiff hopes to prove in the future do not cure the deficiencies in plaintiff's complaint for purposes of the Court's fraudulent joinder analysis. *See Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 74 (7th Cir. 1992) (responding to plaintiff's contention that "some facts might turn up to support a claim against [the non-diverse defendant]" and holding that although the fraudulent joinder proponent bears a heavy burden, "it need not negate any possible theory that [plaintiff] might allege in the future: only his present allegations count").

12

"*defendants*" had "knowledge of the serous health risks" and "failed to adequately warn plaintiff and/or her *health care provider*") (emphasis added); Doc. 1-2 ¶ 76 ("*defendants* failed to provide adequate warning to consumers and/or *health care providers* of the product") (emphasis added); Doc. 1-2 ¶ 86 ("*Defendants* advised consumers *and the medical community* that Yaz" was safe") (emphasis added); Doc. 1-2 ¶ 110 ("*Defendants* . . . made representations to plaintiff and her *medical providers* regarding the character and/or quality of Yaz") (emphasis added).

Further, although certain allegations in the complaint directed generically against "defendants" relate specific acts that could serve as a basis for claims sounding in statutory consumer protection or intentional misrepresentation/fraud, these allegations cannot reasonably be interpreted to reference conduct on the part of The Vancouver Clinic. *See e.g.*, Doc. 1-2 ¶ 111 ("*defendants* represented that *their* product was . . . safe") (emphasis added); Doc. 1-2 ¶ 114 ("*defendants* negligently and/or intentionally misrepresented this information in *its* product labeling, promotions, and advertising campaigns") (emphasis added); ("*defendants*" violated the WCPA by "knowingly marketing an unsafe product, and by negligently and *intentionally furnishing to medical providers free samples of its product* to provide and prescribe to consumers") (emphasis added). This is particularly evident in light of the repeated allegations regarding the

misrepresentations the "defendants" allegedly made to plaintiff's healthcare providers and the medical community in general.[6]

Considering the above, the Court concludes that plaintiff has failed to state a claim against The Vancouver Clinic for statutory consumer protection or intentional misrepresentation/fraud. Accordingly, based on the allegations in plaintiff's complaint, these claims have no chance of success in state court. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73-74 (7th Cir. 1992) (affirming district court's finding of fraudulent joinder where plaintiff failed to allege any impropriety on the part of the non-diverse defendant; a requisite element of the relevant cause of action). *See also Id.* at 74 (finding fraudulent joinder based on "gaps" in plaintiff's complaint as to the non-diverse defendant).

## CONCLUSION

The Court concludes that, under the WPLA, The Vancouver Clinic is exempt from liability for plaintiff's product liability claims – which include plaintiff's claims for strict liability, negligence, breach of express and implied warranties, and negligent misrepresentation. The Vancouver Clinic is also not subject to liability under Washington's version of the Uniform Commercial Code. Accordingly, plaintiff's claims for strict liability, negligence, breach of express and implied warranties, and negligent misrepresentation are without merit. Further,

---

[6] The Court agrees with defendants' contention that any other interpretation would "stretch the concept of resolving ambiguity in Plaintiff's favor past its breaking point." Doc. 17 p. 11.

considering the allegations in plaintiff's complaint, plaintiff's statutory consumer protection and intentional misrepresentation/fraud claims have no chance of success in state court. Because plaintiff has failed to bring a viable claim against The Vancouver Clinic, the Court finds that The Vancouver Clinic has been fraudulently joined. Plaintiff's motion to remand is therefore **DENIED**. Additionally, the Court **DENIES** plaintiff's motion for oral argument as unnecessary.

**So Ordered**

Digitally signed by David R. Herndon
Date: 2011.08.25 09:43:45 -05'00'

**Chief Judge**                                                    **Date: August 25, 2011**
**United States District Court**